IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL OSATO EKENEZA § <br> (A-Number 207619895), § <br> § <br> Petitioner, § <br> § <br> V. § <br> § <br> JIM SKINNER, ET AL., § <br> § <br> Respondents. § | No. 3:19-cv-2306-S-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Michael Osato Ekeneza, detained at an ICE facility in this district, filed *pro se* claims on the form used for making habeas claims under 28 U.S.C. § 2241. *See* Dkt. No. 3. His case was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from the presiding United States district judge.

The Court entered an order on October 8, 2019 providing that,

> [a]fter examining Ekeneza's claims, the Court questions whether it has subject matter jurisdiction over them (or at least some of them) and finds it appropriate to request that the Clerk electronically serve a copy of this order, together with a copy of the petition and its attachments, if any, on the United States Attorney for the Northern District of Texas.
> 
> That office must, by December 9, 2019, file a response to this order explaining whether, in its view – regardless how the Court construes the *pro se* litigant's claims (for example, as habeas claims under Section 2241, civil rights claims, or claims under the Federal Tort Claims Act) – any provision of the Immigration and Nationality Act [the "INA"], 8 U.S.C. § 1101, *et seq.*, prevents the Court from obtaining subject matter jurisdiction over any claim alleged, *see, e.g.*, *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936 (5th Cir. 1999); *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001); *Najera v. United States*, 926 F.3d 140 (5th Cir. 2019);

> *see also De La Paz v. Coy*, 786 F.3d 367 (5th Cir. 2015).
>
> Ekeneza may submit a reply brief to the response within 30 days from the date of service of the response. Any reply filed must be limited to the arguments raised in the response and shall not include any new allegations of fact or new grounds for relief.

Dkt. No. 4 (emphasis omitted).

The government filed the court-ordered response and asserts "that a provision of the INA – specifically, the provision at 8 U.S.C. § 1252(g) – operates as a jurisdictional bar here." Dkt. No. 6; *see also* Dkt. No. 7.

Ekeneza failed to file a reply, and his time in which to do so has passed.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action with prejudice for failure to state a claim.

## Applicable Background

As set out in the government's response,

> Ekeneza is a citizen of Nigeria. [Dkt. No. 7 ("App.") p.] 3. Ekeneza entered the United States on March 16, 2013, as a nonimmigrant visitor for business. *Id.* Ekeneza's status was adjusted to an F1 student in January 2014. *Id.* His student visa was terminated in March 2015. In 2014, he was convicted for DWI. App. p. 4. On or about June 2, 2018, Ekeneza was arrested for a new DWI offense. *Id.* On that same day, a detainer was placed on him by ICE. App. p. 11. Ekeneza bonded out on his state charges on June 6, 2018, but was held in custody pursuant to the detainer. *Id.* On June 7, 2018, Ekeneza was transferred from the custody of Collin County to ICE. On this same day, DHS issued him a Notice to Appear in removal proceedings, charging him with removability under 8 U.S.C. § 1182(a)(1)(C)(i) for failing to maintain or comply with the conditions of the nonimmigrant status under which he was admitted. App. pp. 1-3.
>
> Given Ekeneza's arrest for a second DWI offense, ICE determined that Ekeneza represented a danger to the community and held him in custody at "no bond." *See* App. p. 4. On or about November 5, 2018,

Ekeneza filed an "Application for Redetermination of Custody Status" with the immigration court, requesting that he be given a $1,500 bond. App. p. 4. The immigration court held a hearing on Ekeneza's request for bond on November 15, 2018. *Id.* The immigration court denied the request to be issued a bond and ordered that Ekeneza remain detained without a bond. *Id.* In a written decision issued on December 27, 2018, the immigration court articulated its findings and explained, among other things, that "the Fifth Circuit has recognized [that] the dangers associated with drunk driving are well known and documented and the very nature of the crime represents a serious risk of injury to others," and that "[i]n light of [Ekeneza's] arrest and conviction for DWI in 2014 followed by a second DWI arrest in 2018, the Court finds [Ekeneza] is a danger to the community and should be held without bond." *Id.* (internal quotation marks and citation omitted).

Ekeneza appealed that decision, and on April 9, 2019, the Board of Immigration Appeals issued a decision affirming the immigration court and dismissing Ekeneza's appeal. App. pp. 7-8. On or about July 24, 2019, Ekeneza filed another application for a bond redetermination and the immigration court held a hearing on August 8, 2019. App. p. 9. The immigration court issued a written decision with its findings – again denying Ekeneza's request for a release on bond – on September 4, 2019. App. pp. 9-10. Ekeneza appealed this second denial of bond to the Board of Immigration Appeals; the appeal is still be pending. [As of December 9, 2019,] Ekeneza [was] still in immigration court proceedings.

Dkt. No. 6 at 2-3.

The government further explains that, as filed, this is Ekeneza's

third petition for writ of habeas corpus under 28 U.S.C. § 2241 relating to his detention in immigration custody pending removal proceedings. In his first petition, filed March 15, 2019 in case 3:19 CV-659-M, Ekeneza alleged that the Notice to Appear he received was defective and insufficient and that he should be released from immigration custody. The government filed a response on April 10, 2019. In his second petition, filed October 2, 2019 in case 3:19-CV-2343-N, he challenged the length of time he has spent in immigration pending the finality of his removal proceedings and requesting release from detention. The government filed a response on December 3, 2019.

In the instant petition, Ekeneza appears to be again challenging the fact that he has been held in detention pending the removal proceedings that U.S. Immigration and Customs Enforcement (ICE) commenced against him after his most recent arrest for driving while

intoxicated (after a prior DWI conviction).

*Id.* at 1-2.

Through this action, Ekeneza brings civil rights claims related to his immigration detention following a June 2018 DWI. *See* Dkt. No. 3 at 6-8. He essentially alleges – against Texas municipalities and/or their officials and/or employees and possibly federal authorities – that he should not have been detained by Collin County and Johnson County pursuant to an ICE detainer. *See, e.g., id.* at 7 ("Instead of the Collin County Jail setting me at liberty, I was re-arrested solely because of a DHS detainer, which is a requested, and not mandatory, for ICE to assume custody of me, without any probable cause that I have committed any crime. An action that has led to my detention for more than fourteen months, emotional injury, [loss] of properties and indebtedness."); *id.* (alleging that, pursuant to "[a]n administrative warrant," he "was falsely imprisoned" by state law enforcement "without probable cause").

## Legal Standard and Analysis

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *see also Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) ("Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims."); *cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) ("Subject-matter limitations ... keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level."

(citations omitted)).

> As a general rule, federal district courts have jurisdiction under 28 U.S.C. § 1331 over "all civil actions arising under the Constitution, law, or treaties of the United States." But Congress may curtail that grant of jurisdiction "by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019).

*O.A. v. Trump*, 404 F. Supp. 3d 109, 127 (D.D.C. 2019).

The INA contains such a scheme, *see* 8 U.S.C. § 1252, under which "[j]udicial review in the removal context is heavily circumscribed," *Duron v. Johnson*, 898 F.3d 644, 646 (5th Cir. 2018); *see Isaula v. Nielsen*, Civ. A. No. H-18-2992, 2019 WL 93307, at *2 (S.D. Tex. Jan. 3, 2019) (noting that three parts of the INA – 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) – strip "a district court's jurisdiction to hear direct or indirect challenges attacking an immigration judge's final order of removal"); *but see Alam v. Nielsen*, 312 F. Supp. 3d 574, 580-81 (S.D. Tex. 2018) ("As all-encompassing as [Sections 1252(a)(5), 1252(b)(9), and 1252(g)] may seem, the [United States] Supreme Court has noted their limitations.").

As the government contends to be applicable here, Section 1252(g) provides that,

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

> [But] Section 1252(g) does not "cover[ ] the universe of deportation claims." Rather, "it applies only to three discrete actions that the

> Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" "There are of course many other decisions or actions that may be part of the deportation process."

*Alam*, 312 F. Supp. 3d at 580 (quoting *Reno v. American-Arab Anti-Discrim. Cmte.*, 525 U.S. 471, 482 (1999); emphasis omitted).[1]

Ekeneza's current claims stem from the immigration detainer, which, as the government recounts, was issued several days before "DHS issued him a Notice to Appear in removal proceedings, charging him with removability." Dkt. No. 6 at 2. And, as the United States Court of Appeals for the Fifth Circuit recently reiterated, in rejecting an argument that Section 1252(g)'s stripped the district court of subject matter jurisdiction,

> this court has held that "removal proceedings commence when [ICE] files the appropriate charging document with the immigration court." *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001). Here, ICE filed the charging document – the notice to appear – with the Arlington

---

[1] *See also, e.g.*, *Mochama v. Zwetow*, Civ. A. No. 14-2121-KHV, 2017 WL 36363, at *7 n.10 (D. Kan. Jan. 3, 2017) ("The three discrete actions which fall under the jurisdictional bar of Section 1252(g) represent distinct components of the deportation process. The first action, 'commencing proceedings,' occurs when law enforcement officers apprehend an alien with no legal status in the United States and file a charging document with the immigration court. *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001); *see Maria S. v. Garza*, No. 1:13-CV-108, 2015 WL 4394745, at *3 (S.D. Tex. July 15, 2015) (charging document served on alien gives notice of nature of proceedings and time to prepare defense). 'Adjudicating cases' refers to removal proceedings which lead to a hearing before an immigration judge who decides the 'inadmissibility or deportability of an alien.' 8 U.S.C. § 1229a. If the immigration judge finds that an alien has no legal status to remain in the United States, the immigration judge issues an order of removal. *Id.* The third action, 'executing removal orders,' occurs when officials remove an illegal alien from the United States pursuant to a court order. *See Sifuentes-Barraza v. Chertoff*, No. 03-51202, 2006 WL 2522143, at *1 (5th Cir. Sept. 1, 2006).").

> Immigration Court on July 12, 2013 – two days after Najera's release from his allegedly false imprisonment. The government does not offer a theory for distinguishing *DeLeon-Holguin*, and we are aware of none. Accordingly, we conclude that § 1252(g) did not strip the district court of subject matter jurisdiction.

*Najera*, 926 F.3d at 143.[2]

Accordingly, the Court should not accept the government's position that subject matter jurisdiction is lacking. But that does not mean that Ekeneza's claims should go forward.

As stated above, Ekenza does not seek habeas relief. Under his theory of false imprisonment, he instead requests declaratory relief and "monetary damages of $1,500,000.00 against defendants under 42 U.S.C. § 1983, for injury caused, emotional distress, property [loss] and indebtedness arising from its actions." Dkt. No. 3 at 8.

While, as an immigration detainee, the provisions of the Prison Litigation

---

[2] *See also Thom v. Ashcroft*, 369 F.3d 158, 164-65 (2d Cir. 2004) ("We find no reason ... to accept Petitioner's contention that his deportation proceedings began in 1984. We hold, instead, that his proceedings started in 1998, the year in which the INS served him with a Notice to Appear and filed that Notice with the immigration court. Unlike the service or filing of a Notice to Appear, the INS's issuance of a detainer notice is of limited significance – it is 'merely a method of advising the prison officials to notify the I.N.S. of the petitioner's impending release or transfer .... The detainer expresses only the intention of the I.N.S. to make a determination of deportability, if and when, the subject of the notice becomes available at a later time.'" (quoting *Waldron v. INS*, 17 F.3d 511, 515 (2d Cir. 1994); footnote omitted)); *Uspango v. Ashcroft*, 289 F.3d 226, 229 (3d Cir. 2002) ("INS regulations provide that removal proceedings commence with the filing of a notice to appear with the Immigration Court (Reg. §§ 3.14 and 239.1). That concept has been endorsed by several other Courts of Appeals (see, e.g., *DeLeon–Holguin v. Ashcroft*, 253 F.3d 811, 814 (5th Cir. 2001); *Cortez-Felipe v. INS*, 245 F.3d 1054, 1057 (9th Cir. 2001); *Costa v. INS*, 233 F.3d 31, 37 (1st Cir. 2000); *Morales-Ramirez v. Reno*, 209 F.3d 977, 983 (7th Cir. 2000)).").

Reform Act, including 28 U.S.C. § 1915A, do not apply to Ekeneza, *see, e.g., Ojo v. I.N.S.*, 106 F.3d 680, 682-83 (5th Cir. 1997), as to his civil claims, the Court "can make a [Federal Rule of Civil Procedure] 12(b)(6) ruling *sua sponte*, as long as it gives [him] notice and an opportunity to respond," *Kirabira v. Bureau of Immigration & Customs Enforcement*, No. 3:08-cv-1025-B, 2009 WL 81095, at *3 (N.D. Tex. Jan. 12, 2009) (citing *Lozano v. Ocwen Fed. Bank*, 489 F.3d 636, 642-43 (5th Cir. 2007); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)). These findings, conclusions, and recommendations afford Ekeneza notice, and the period for filing objections to them affords him an opportunity to respond.

Without deciding that Ekeneza could allege a false imprisonment claim against federal officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[3] no matter which vehicle may allow Ekeneza to bring

---

[3] *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government."); *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("[B]efore allowing Cantú to sue under *Bivens*, we must ask two questions. First, do Cantú's claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?); *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357, at *11 (N.D. Tex. July 29, 2019) ("In *Abbasi*, the Supreme Court further 'stressed that any extension of *Bivens* to new factual scenarios is now a "'disfavored' judicial activity.'" *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting, in turn, *Iqbal*, 556 U.S. at 675)). And so, 'there is a two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any "special factors" preclude extending *Bivens* to this 'new context." *Id.* at 784 (quoting *Hernandez v. Mesa*, 885 F.3d 811, 816-18 (5th Cir. 2018) (en banc))." (footnote omitted)), *rec. accepted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019).

such a claim – whether Section 1983 or, as against the United States, the Federal Tort Claims Act ("FTCA") – his factual allegations fail to state a plausible claim of false imprisonment, *see, e.g.*, *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (noting that dismissal under Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint" (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)).

A plaintiff need only "plead facts sufficient to show" that the claims that he asserts have "substantive plausibility" by stating "simply, concisely, and directly events" that they contends entitle them to relief. *Johnson*, 574 U.S. at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The Fifth Circuit, in *Najera*, addressed the merits of a false imprisonment claim against the United States under the FTCA, analyzing Texas law:

> In order to establish a valid false imprisonment claim under Texas law, Najera must show: "(1) willful detention, (2) without consent, and (3) without authority of law." *Davila v. United States*, 713 F.3d 248, 262 (5th Cir. 2013) (quoting *Martinez v. English*, 267 S.W.3d 521, 629 (Tex. App. – Austin 2008, pet. denied)).

> "The plaintiff must prove the absence of authority in order to establish the third element of a false imprisonment cause of action." *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 376 (Tex. 1985).

*Najera*, 926 F.3d at 144-45 (concluding that "Najera did not meet his burden to show that the Border Patrol and ICE agents lacked authority of law to arrest and detain him").

Here too, on the facts as alleged by Ekeneza, officials acted under legal authority in issuing (and following) the detainer that kept Ekeneza in custody after he bonded out, *see* Dkt. No. 7 at 13-15, thus negating the final element necessary to allege a false imprisonment claim, *see, e.g.*, *Douglas v. United States*, 796 F. Supp. 2d 1354, 1368 (M.D. Fla. 2011) ("[C]ourts in at least two other states with false imprisonment law similar in relevant respect to Florida law have found that ICE agents who detained suspects without a warrant issued by a neutral magistrate did so under legal authority, thereby barring the detainee's false imprisonment claim." (citing *Tovar v. United States*, No. 3:98-cv-1682, 2000 WL 425170, *7-*8 (N.D. Tex. Apr. 18, 2000) (noting that INS agents had "legal authority" to detain plaintiff under INA, barring false imprisonment claim under Texas law), *aff'd*, 244 F.3d 135 (table), 2000 WL 1901505 (5th Cir. Dec. 12, 2000) (per curiam); citation omitted)).

**Recommendation**

The Court should dismiss this action with prejudice for failure to state a claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 20, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE